Filed 3/8/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DEANNA TWILLA BARTON,<br><br>    Defendant and Appellant. | F076599<br><br>(Super. Ct. No. CRF46403)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Linnéa M. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

This case recalls the proverb, "You can't have your cake and eat it too."  The question presented:  Where a defendant negotiates a plea for a stipulated sentence and waives the right to appeal the sentence, may the defendant take advantage of a favorable sentencing law enacted thereafter (which may otherwise apply retroactively under

ordinary circumstances)?  We think not.  In reaching this conclusion, we part company with our colleagues in Division One of the Fourth District Court of Appeal, who arrived at a different result in *People v. Wright* (2019) 31 Cal.App.5th 749.

Deanna Twilla Barton (defendant) pleaded guilty to furnishing methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and maintaining a place for the sale of a controlled substance (*id*., § 11366).  (Undesignated statutory references are to the Health and Safety Code.)  For enhancement purposes, she admitted two prior convictions under section 11379.  As part of her plea agreement, she waived her appeal rights.  In return, additional charges were dismissed and she received a stipulated prison sentence of eight years eight months, which included a pair of three-year enhancements for the drug-related priors (see former § 11370.2, subd. (c)).

Defendant entered her plea on September 25, 2017.  She was sentenced on October 23, 2017.  In the interim, on October 11, 2017, Governor Brown approved Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180), which went into effect on January 1, 2018.  Senate Bill 180 amended former section 11370.2 by eliminating its three-year enhancements for most drug-related prior convictions.  The then-pending legislation was not discussed on the record in the proceedings below.

In reliance on the "*Estrada* rule" (see *In re Estrada* (1965) 63 Cal.2d 740, 748), defendant contends Senate Bill 180 is retroactive and thus invalidates the portion of her sentence imposed pursuant to former section 11370.2.  She seeks to have the enhancements vacated, thereby reducing her prison sentence by six years.  The People concede the issue of retroactivity but dispute her entitlement to relief.  We conclude defendant's waiver of appellate rights forecloses consideration of her claim and requires dismissal of the appeal.

The People argue defendant's claim should be resolved in a habeas proceeding, which would allow for a factual determination regarding "whether the parties' negotiations included an agreement that [her] sentence would remain fixed despite any

2.

amendments to the relevant law ….” This argument overlooks the holdings of *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon)*, which we find to be controlling and dispositive. Despite defendant's acknowledgement of *Panizzon*, the case is not discussed in the People's briefing (although it is cited for an unrelated point). Defendant asks us to recognize an exception to *Panizzon* based on her particular circumstances; the People fail to address the issue.

The California Supreme Court has distinguished between general and specific waivers of appellate rights. As we will discuss, a general waiver leaves open the possibility that future events may deprive one party of the full benefit of its bargain. The parties can safeguard against such outcomes by inserting specific terms into their agreement. The plea agreement in this case contains the type of language that *Panizzon* found to constitute a specific waiver of the right to appeal “‘future sentencing error.’” (*Panizzon*, *supra*, 13 Cal.4th at p. 85.) Where, as here, the parties' agreement includes a specified prison term and a waiver of the right to appeal the sentence, the waiver precludes future challenges to the legality of the agreed-upon period of confinement. (*Id*. at p. 86.) Therefore, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from events occurring while defendant's son was incarcerated at the Sierra Conservation Center in Tuolumne County. Defendant was reportedly “involved in preparing cards laced with methamphetamine and then placing those cards into the US mail to be sent to the [prison].” On February 7, 2015, she was found in possession of methamphetamine and a “meth pipe” while attempting to visit her son. On the same date, law enforcement officers executed a search warrant at her residence and seized “over 240 grams of methamphetamine … plus a scale.”

Defendant was charged with possession of methamphetamine in a prison facility (Pen. Code, § 4573.6; count I), conspiracy to send methamphetamine into a prison via mail (*id.*, §§ 182, subd. (a)(1), 4573; count II), furnishing methamphetamine in violation

3.

of section 11379 (count III), maintaining a place for the sale of methamphetamine in violation of section 11366 (count IV), bringing a controlled substance and associated paraphernalia into a prison facility (Pen. Code, § 4573; count V), and furnishing methamphetamine to a person held in custody (*id.*, § 4573.9; count VI). In relation to count III and for purposes of former section 11370.2, defendant was alleged to have suffered two prior convictions under section 11379. She was further alleged to have served a prior prison term (Pen. Code, § 667.5, subd. (b)).

In exchange for defendant's guilty plea with regard to counts III and IV, plus admission of the prior conviction allegations and a waiver of her appeal rights, the People agreed to dismiss all remaining charges and stipulate to a fixed prison sentence of eight years eight months. Defendant signed and initialed a written waiver stating, in pertinent part, "I understand that I will be waiving my right to appeal and I will not be able to appeal from this Court's sentence based on the plea that I enter into in this matter." She expressed her understanding of the waiver in court by saying "Yes" when told she would receive the stipulated prison term and in response to being asked, "[Do] you understand there won't be any appeal from this conviction[?]"

The parties performed their respective obligations under the plea agreement. The trial court accepted the terms of the agreement and found defendant had knowingly and voluntarily entered her pleas and waived her rights. Accordingly, she was sentenced to the stipulated prison term. The sentence was calculated using the lower term of two years for count III, plus eight months for count IV, and two consecutive three-year enhancements under former section 11370.2, subdivision (c), for her prior section 11379 convictions.

Three weeks after she was sentenced, defendant filed a notice of appeal. By subsequent order of this court, a certificate of probable cause was deemed to have been timely filed. Defendant acknowledges the certificate does not entitle her to appellate

4.

review of issues waived by virtue of a plea or the specific terms of a plea agreement. (*People v. Kaanehe* (1977) 19 Cal.3d 1, 9; see *Panizzon*, *supra*, 13 Cal.4th at p. 79.)

## DISCUSSION

Senate Bill 180 eliminated the enhancement provisions upon which the bulk of defendant's sentence was based. (§ 11370.2, subd. (c); Stats. 2017, ch. 677, § 1.) In her words, the stipulated prison term was lawful when she executed the plea agreement, but it "became unauthorized after the sentencing." Because "there is nothing in the record to suggest that [she] knew of the looming SB 180 issue when she entered into [her] plea," defendant argues she did not knowingly and intelligently waive her right to challenge the legality of her sentence based on future changes in the law. The People advocate for a factual investigation into the parties' intentions at the time of the plea, but defendant claims the scope of her waiver is a legal issue. We agree with defendant insofar as her appeal rights have been waived as a matter of law based on certain undisputed facts.

Both parties discuss *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*). In *Doe*, the California Supreme Court addressed the following question pursuant to a request from the Ninth Circuit Court of Appeals: "'Under California law of contract interpretation as applicable to the interpretation of plea agreements, does the law in effect at the time of a plea agreement bind the parties or can the terms of a plea agreement be affected by changes in the law?'" (*Id*. at p. 66.) The answer is summarized in the final paragraph of the opinion:

> "[T]he general rule in California is that a plea agreement is "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy....'" [Citation.] It follows, also as a general rule, that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction. To that extent, then, the terms of the plea agreement can be affected by changes in the law." (*Id*. at pp. 73–74.)

5.

The *Doe* litigant had pleaded guilty to committing lewd and lascivious acts upon a child prior to the enactment of California's "Megan's Law." (*Doe*, *supra*, 57 Cal.4th at p. 66.) The conviction required him to register as a sex offender, but, under the law at the time of his plea, such information was not a matter of public record. When the Legislature enacted Megan's Law, the man filed a civil complaint in federal court "asserting that requiring him to comply with the amended law's public notification provisions would violate his plea agreement." (*Doe*, at p. 67.)

There are two important distinctions between *Doe* and the present case: *Doe* did not involve a challenge to the legality of a stipulated prison sentence or a waiver of appeal rights. The high court discussed contract principles governing plea agreements in general. Interpretation of the *Doe* litigant's plea agreement was an issue reserved for the Ninth Circuit, which had sought guidance from our state Supreme Court "to ensure its decision [would be] consistent with California law." (*Doe*, *supra*, 57 Cal.4th at p. 68.)

To summarize the key holdings of *Doe*, parties to a plea agreement "are deemed to know and understand that the state … may enact laws that will affect the consequences attending the conviction entered upon the plea." (*Doe*, *supra*, 57 Cal.4th at p. 70.) However, the parties can affirmatively agree, or reach an implied understanding, that "the consequences of a plea will remain fixed despite amendments to the relevant law." (*Id*. at p. 71.) "Whether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case." (*Ibid*.) In this case, we need look no further than the language of the parties' agreement and the circumstances under which it was executed.

"A defendant may waive the right to appeal as part of a plea bargain where the waiver is knowing, intelligent and voluntary." (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815.) Case law distinguishes between general and specific waivers. A general waiver, such as "'I waive my appeal rights'" or "'I waive my right to appeal any ruling in this case,'" contemplates errors that occur before the waiver is executed but does not

extend to unforeseen or unknown future errors. (*Panizzon*, *supra*, 13 Cal.4th at p. 85, fn. 11; *In re Uriah R*. (1999) 70 Cal.App.4th 1152, 1157.) "If, however, the defendant agrees to a bargain which includes a specific or indicated sentence, and if that is the sentence actually imposed, the defendant's waiver will foreclose appellate review of the sentence." (*Uriah R*., at p. 1157, citing *Panizzon*, at pp. 78–79 and *People v. Nguyen* (1993) 13 Cal.App.4th 114, 122.)

In *Panizzon*, a defendant pleaded no contest to multiple felonies in return for a specified sentence of life with the possibility of parole, plus 12 years. (*Panizzon*, *supra*, 13 Cal.4th at p. 73.) He later disputed the length of his prison term, arguing it constituted cruel and unusual punishment in light of the relatively lenient sentences his codefendants had received. The defendant posited that when a negotiated prison term "'is challenged on the basis of its constitutional disproportionality in comparison with sentences imposed subsequently on his codefendants, even a specific waiver as to sentencing error cannot logically encompass *prospective* events that the defendant *did not contemplate* in agreeing to a specified sentence.'" (*Id.* at p. 85.) His argument was rejected. (*Id.* at pp. 85–89.) Although an appellate court had denied the claim of constitutional error on the merits, the California Supreme Court ruled the appeal should have been dismissed given the defendant's waiver of his right to challenge the sentence. (*Id.* at pp. 73–74, 89–90.)

We perceive no material distinction between the waiver of appeal rights in *Panizzon*, which was found to be specific as to sentencing error, and the waiver executed by defendant Barton. In *Panizzon*, the written agreement stated, "'I hereby waive and give up my right to appeal from the sentence I will receive in this case.'" (*Panizzon*, *supra*, 13 Cal.4th at p. 82.) Here, the relevant portion of defendant's waiver form reads, "I understand that I will be waiving my right to appeal and I will not be able to appeal from this Court's sentence based on the plea that I enter into in this matter."

The trial judge in *Panizzon* failed to admonish the defendant regarding the waiver of his right to appeal. Nevertheless, the California Supreme Court found a knowing and

7.

intelligent relinquishment of that right. The written waiver contained "defendant's representations that he understood the sentence that would be imposed if he pleaded no contest, that he had discussed with his attorney both the paragraph specifying the sentence to be imposed and the paragraph containing the waiver of the right to appeal the sentence, and that he fully understood all matters set forth in the document without exception." (*Panizzon*, *supra*, 13 Cal.4th at p. 84.) In addition, defense counsel had attested to reviewing the terms of the agreement with his client and "concurred in defendant's decision to waive the rights specified in the document." (*Ibid*.)

"Absent something in the record raising a doubt defendant understood and knowingly waived his appeal rights, a written waiver of those rights by defendant, coupled with defendant's and his attorney's attestations to the court that defendant understood and voluntarily relinquished each right, is sufficient to establish a defendant's waiver of his right to appeal was knowingly, voluntarily, and intelligently made." (*People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 400, citing *Panizzon*, *supra*, 13 Cal.4th at pp. 83–84.) In this case, defendant initialed twice next to the written waiver of her appeal rights—once to indicate she understood the right and once to indicate her waiver thereof. On the same document, defense counsel signed and dated a statement reading, "I have explained the contents of this form to my client. I have had sufficient time to discuss this case with my client, including the elements of the crime, and I have advised him/her of his/her rights, defenses, and the consequences of his/her plea. I join in the waiver of the rights made by my client …."

During the plea hearing, defendant responded "Yes" when the trial court said, "And you understand there won't be any appeal from this conviction?" Moments later, the trial court explained, "You will get a stipulated term. It's agreed upon. You will get your half-time on this case, and it's eight years, eight months. [¶] Do you understand that?" She again replied, "Yes." Defense counsel thereafter represented that she had been given sufficient time to consult with defendant about the agreement. Counsel

8.

responded affirmatively when asked, "Do you concur in the waiver of rights and the entry of the plea?"

For the reasons discussed, we conclude defendant knowingly and intelligently waived the right to challenge the legality of her sentence. Our conclusion is further supported by *People v. Hester* (2000) 22 Cal.4th 290. There, a defendant who had plea bargained for a stipulated prison term attempted to argue on appeal that his sentence violated Penal Code section 654 and was therefore unauthorized. There was no express waiver of the issue, but the California Supreme Court found an implied waiver based on principles of estoppel. "Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Hester*, at p. 295.)

Defendant's opening brief states, "At first blush, the waiver [defendant] signed might look indistinguishable from that at issue in *People v. Panizzon*." This seems to foreshadow a discussion of grounds for departing from precedent, but the argument never materializes. Instead, a two-page summary of *Panizzon* is followed by a citation to *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*) for the proposition "that all plea bargains 'contemplate and incorporate' all subsequent changes in the law."

The *Harris* opinion merely reiterates the holding of *Doe* and applies it in the context of the Safe Neighborhoods and Schools Act, also known as Proposition 47, which reduced certain drug-related crimes from felonies to misdemeanors. (*Harris*, *supra*, 1 Cal.5th at pp. 987, 990–993.) In *Harris*, the defendant pleaded guilty to felony grand theft in exchange for a stipulated prison sentence of six years. However, the plea agreement did not include a waiver of appeal rights and the legality of the sentence was not in dispute. The issue was whether the People were entitled to rescind the plea

agreement if the trial court reduced the conviction to a misdemeanor and ordered resentencing pursuant to Proposition 47. To the extent defendant is suggesting *Panizzon* was somehow overruled by *Doe* or *Harris*, we are not persuaded.[1]

Defendant implies her circumstances are distinguishable from those in *Panizzon* because her sentence was not unauthorized when she executed the plea agreement. She reasons that because "the *Estrada* claim was not ripe" at the time of sentencing, "her waiver could not have been knowing and intelligent." As we have explained, the *Panizzon* defendant made a nearly identical argument: He claimed "any error occurring after the entry of his plea constituted 'future sentencing error' that was beyond the scope of the waiver." (*Panizzon*, *supra*, 13 Cal.4th at p. 85.) The issue was alternatively phrased as follows: "[D]efendant asserts that a specific waiver of the right to appeal a negotiated sentence is unenforceable as to 'unforeseen or unknown errors' occurring subsequent to the waiver." (*Ibid.*) The only difference between defendant's claim and the one in *Panizzon* is the reason why defendant contends her sentence was subsequently rendered unauthorized. As we read *Panizzon*, the dispositive inquiry is not whether or why subsequent events have transformed a prison term into an unauthorized sentence, but whether (1) the parties' plea agreement specified a particular sentence and (2) the waiver of appellate rights "specifically extended to any right to appeal such sentence." (*Id*. at p. 86.)

Lastly, defendant argues we "should follow the decision in *Mumm*," referring to *People v. Mumm*, *supra*, 98 Cal.App.4th 812 (*Mumm*). There, a defendant pleaded guilty

---

[1]Eligible defendants obtain relief under Proposition 47 by petitioning the trial court to have their convictions and sentences reduced as authorized by the legislation, not by filing an appeal challenging the legality of their sentence. (Pen. Code, § 1170.18.) Again, neither *Doe* nor *Harris* involved a challenge to the legality of a defendant's negotiated sentence or circumstances under which a defendant had executed a specific waiver of appellate rights. The waiver in this case requires dismissal of the appeal regardless of whether Senate Bill 180 applies retroactively to cases not yet final as of the date of its enactment. Questions regarding how Senate Bill 180 might impact negotiated sentences in cases where the defendant's appellate rights have not been waived are beyond the scope of our discussion and we express no opinion about such issues.

10.

to certain drug-related offenses and "agreed to waive his right to appeal based on 'issues regarding priors allegations.'" (*Id*. at p. 815.) When the waiver was executed, the trial court had not yet determined whether his prior Arizona conviction for armed robbery qualified as a strike under California's three strikes law. The appellate court construed the waiver provision as a "broad or general waiver of appeal rights." (*Ibid.*) Therefore, "[b]ecause the issue of the Arizona conviction was unresolved at the time Mumm entered his guilty plea, it fell 'outside of [his] contemplation and knowledge when the waiver was made.'" (*Ibid.,* quoting *Panizzon*, *supra*, 13 Cal.4th at p. 86.)

The facts of *Mumm* are readily distinguishable. First, the plea agreement did not include a stipulated sentence. Second, there was no specific waiver of the right to appeal the sentence. Because the issue of the strike allegation was left open under the terms of the plea agreement, the *Mumm* defendant's sentence was unknown when he entered his plea and executed a general waiver of his appellate rights.

Here, defendant's plea agreement included a stipulated prison term of eight years eight months. She knew the exact length of her sentence when she waived her right to appeal the sentence. Under those circumstances, "both the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made." (*Panizzon*, *supra*, 13 Cal.4th at p. 86.) Put differently, "[d]efendant's characterization of the issue on appeal as an 'unforeseen or unknown error' is off the mark because the sentence imposed by the court was neither unforeseen nor unknown at the time defendant executed the [w]aiver and [p]lea agreement." (*Ibid*.) Therefore, we conclude defendant knowingly and intelligently executed an enforceable waiver of the right to challenge her sentence on appeal.

We realize our analysis conflicts with that of our colleagues in Division One of the Fourth District Court of Appeal as reflected in *People v. Wright*, *supra*, 31 Cal.App.5th 749 (*Wright*). The *Wright* defendant pleaded guilty to drug charges and admitted drug-

11.

related prior offenses in exchange for a stipulated 11-year sentence and the dismissal of additional counts. His plea agreement included a waiver of the right to appeal "'any sentence stipulated herein.'" (*Id.* at p. 752.) He later appealed, arguing his sentence would soon be rendered unauthorized by the enactment of Senate Bill 180. The People moved to dismiss the appeal, relying on *Panizzon* to argue the plea agreement contained a specific waiver of the right to appeal any sentencing errors. The appellate court rejected the argument, impliedly concluding the defendant merely executed a general waiver of his appellate rights. (*Id.* at pp. 754–755.)

The panel in *Wright* based its decision on *Doe*, focusing on the principle "that subsequent statutory enactments or amendments may alter the terms of the plea bargain." (*Wright*, *supra*, 31 Cal.App.5th at p. 755.) Although *Doe* allows parties to reach express or implied understandings regarding the consequences of a plea bargain, the panel found "nothing in Wright's plea agreement provided or implied that it would be unaffected by subsequent changes in the law." (*Id.* at p. 756.) In refusing to dismiss the appeal, the *Wright* court formulated a new rule: "If parties to a plea agreement want to insulate the agreement from future changes in the law they should specify that the consequences of the plea will remain fixed despite amendments to the relevant law." (*Ibid.*)

As applied to plea bargains in general, the Fourth District's new rule is both reasonable and consistent with *Doe*. However, as we have discussed, *Doe* was a civil case involving neither sentencing error nor the enforceability of a waiver of appeal rights. The *Doe* litigant had argued that mere reference to a statute within a plea agreement implies the defendant will be unaffected by any amendments to the statute, assuming judicial and prosecutorial silence on the issue. The California Supreme Court rejected his argument, but in the same discussion it recognized that "the facts and circumstances of a particular plea agreement might give rise to an implicit promise that the defendant will be unaffected by a change in the law." (*Doe*, *supra*, 57 Cal.4th at p. 71.)

12.

In our view, the breadth of the *Wright* holding conflicts with *Panizzon*. Under *Panizzon*, a waiver of the right to appeal a stipulated sentence is sufficient to bar a claim of "'future sentencing error,'" i.e., a claim that events occurring subsequent to the waiver have altered the legality of the sentence. According to *Wright*, it is no longer enough to specifically waive the right to appeal a stipulated sentence; parties must now expressly identify the type of sentencing error contemplated by the waiver.

Furthermore, *Wright* dismisses out of hand the possibility of an implied understanding that waiving the right to appeal a stipulated sentence necessarily includes a claim based on subsequent changes in the law. The very purpose of negotiating a waiver of the right to appeal a sentence is to preclude *any* future claims of sentencing error. (*People v. Becerra* (Feb. 11, 2019, H045600) __ Cal.App.5th __ [2019 Cal.App.Lexis 114, *14–*19] [defendant's waiver of appeal rights, which did "not contain any language suggesting that the parties intended to carve out one or more aspects of the sentence," held to impliedly encompass any subsequent error in the calculation of his custody credits].) This is implicit in the holding of *Panizzon* and numerous cases discussing why principles of estoppel bar most challenges to the legality of a negotiated prison term. (See, e.g., *Hester*, *supra*, 22 Cal.4th at p. 295, citing *People v. Couch* (1996) 48 Cal.App.4th 1053, 1056–1057 [acceptance of specified sentence barred appellate claim of error in imposing it]; *People v. Nguyen*, *supra*, 13 Cal.App.4th at pp. 122–123 [same].) If a plea bargaining defendant waives the right to challenge an agreed-upon sentence, he or she cannot rationally contend the ability to appeal on grounds of sentencing error was an issue left unresolved by the terms of the agreement. (See *Panizzon*, *supra*, 13 Cal.4th at pp. 85–86 [distinguishing *People v. Vargas* (1993) 13 Cal.App.4th 1653 and *People v. Sherrick* (1993) 19 Cal.App.4th 657].)

In summary, the wording of defendant's waiver is materially indistinguishable from the waiver in *Panizzon*, which was found to encompass challenges to the legality of a stipulated sentence. In other words, defendant executed a specific waiver of her

appellate rights. As in *Panizzon*, defendant contends she did not knowingly and intelligently waive the right to challenge unforeseen sentencing errors arising subsequent to the execution of her plea agreement. We are constrained to reject this argument, as *Panizzon* holds "the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made …." (*Panizzon*, *supra*, 13 Cal.4th at p. 86.)

> "'Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him [or her] and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his [or her] decision.' [Citation.] This logic applies with equal force to dispel any notion that the subsequent unfolding of unknown or unforeseen events somehow renders a waiver of appellate rights unintelligent or otherwise defective at the time it was given." (*Panizzon*, *supra*, 13 Cal.4th at pp. 86–87, quoting *Brady v. United States* (1970) 397 U.S. 742, 756–757.)

## DISPOSITION

The appeal is dismissed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.



_____
MEEHAN, J.

14.