Filed 11/6/19; Opinion following rehearing

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D074344 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD275677) |
| KAYVON PATTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed.

Leslie Ann Rose, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Kayvon Patton pleaded guilty to grand theft of personal property (Pen. Code, § 487, subd. (a))[1] after he joined friends and stole cell phones and other electronic devices from an electronics store. Among the conditions of his probation was a condition subjecting his electronic devices to warrantless search. Patton challenges this condition as unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and constitutionally overbroad.

In our initial opinion, we rejected the People's argument that Patton's appeal should be dismissed for failure to obtain a certificate of probable cause. We then concluded the electronics search condition was valid under *Lent* and not overbroad. After our decision, the California Supreme Court issued *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*), clarifying when an electronics search condition is reasonably related to the probationer's future criminality under *Lent*. We granted Patton's petition for rehearing and allowed both parties to file supplemental briefs concerning the effect of *Ricardo P.*[2]

Upon rehearing we conclude, as before, that Patton did not need a certificate of probable cause to challenge the electronics search condition on appeal. Despite a boilerplate waiver of appellate rights in his plea agreement, he did not waive his right to challenge a later-imposed condition of probation that was not referenced in that agreement. Accordingly, his appeal is based on "[g]rounds that arose after entry of the

---

[1] Future statutory references are to the Penal Code unless otherwise indicated.

[2] Neither party requested argument on the *Ricardo P.* issue in their supplemental briefs.

plea and do not affect the plea's validity" and required no certificate. (Cal. Rules of Court, rule 8.304(b)(4).)[3]

Turning to the merits of Patton's appeal, *Ricardo P.* "does not categorically invalidate electronic search conditions. In certain cases, the probationer's offense or personal history may provide the . . . court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1128–1129.) For example, the Supreme Court approved of *In re Malik J.* (2015) 240 Cal.App.4th 896 (*Malik J.*), in which a tailored electronics search condition was reasonably imposed on a probationer given his history of robbing people of their cell phones. (*Ricardo P.*, at p. 1129.)

As we explain, the electronics search condition was validly imposed under *Lent*'s first prong because it relates to his underlying crime. *Ricardo P.* does not alter this analysis. Moreover, because the nature of Patton's offense means that *some* electronics search condition could constitutionally be imposed consistent with *Malik J.*, the condition is not facially overbroad. Any challenge to the closeness of fit between the condition and facts related to Patton's crime or history is an as-applied constitutional claim, forfeited by Patton's failure to object on that basis before the trial court. Accordingly, we affirm.

---

[3] All subsequent rule references are to the California Rules of Court.

FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2018 around 4:30 p.m., officers with the San Diego Police Department responded to a reported theft at Hit Mobile Store. Store employee Miguel O. had been helping a female customer at the front counter when two men entered the store, followed by two more men. At some point he heard a loud crack and saw the four men pulling electronic devices off security cords attached to the wall. They ran out of the store with three iPhones, two Apple Watches, an iPad Pro, a Samsung S7, and Samsung gear VR.

When officers arrived, they discovered a smudged fingerprint on a Samsung phone that was dropped by one of the men on his way out of the store.[4] A lab report identified the fingerprint as belonging to defendant Kayvon Patton. Video from the store's surveillance camera confirmed Patton as one of the four men.

The San Diego County District Attorney charged Patton with felony grand theft of personal property (§ 487, subd. (a)). Patton pleaded guilty as part of a plea agreement whereby he would receive formal probation and pay restitution of $4,620. As part of the plea deal he agreed to "give up my right to appeal . . . any sentence stipulated herein." Another part of the form agreement stated, "As conditions of probation I may be given up to a year in jail custody, plus the fine, and any other conditions deemed reasonable by the Court."

---

[4] The record indicates the fingerprint may have actually been found on the front door of the store instead. The exact location of the fingerprint is not relevant.

In a subsequent conversation with a probation officer prior to sentencing, Patton stated he sold one of the stolen phones to a pawn shop for $550 and used the money to purchase "Norcos."  Patton has a history of substance abuse; he began to drink alcohol at age 13, smoke marijuana at age 15, and take Norco pills at age 15.  Up until his arrest, Patton took Norco pills daily.

At the sentencing hearing in July 2018, the judge imposed three years of formal probation under various conditions with a stay of 240 days in local custody pending successful completion of probation.  The probation conditions included limitations on drug and alcohol possession and an order to stay away from the other unidentified perpetrators.  Another condition required that Patton "submit person, vehicle, residence, property, personal effects, *computers*, *and recordable media including electronic devices* to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation officer] or law enforcement officer."  (Italics added.)  Patton's appeal challenges this condition.  He did not request a certificate of probable cause.

DISCUSSION

A.    *Failure to Obtain a Certificate of Probable Cause*

The People contend we should not reach the merits of Patton's appeal because he did not obtain a certificate of probable cause under section 1237.5 after entering his guilty plea.  That section generally prohibits appeals following pleas of guilty or no contest unless the defendant first obtains a certificate from the trial court attesting that there are reasonable grounds for the appeal.  There are two exceptions to this general

5

rule, as provided in Rule 8.304(b)(4): A certificate is not required if the appeal is based on either "[t]he denial of a motion to suppress evidence under Penal Code section 1538.5" or "[g]rounds that arose after entry of the plea and do not affect the plea's validity." The People contend a certificate was required because the second exception (the only one pertinent here) was not satisfied.

The People do not dispute that the specific grounds for Patton's appeal—a condition of probation imposed at sentencing two months after his plea—"arose after entry of the plea" within the meaning of Rule 8.304. They suggest, however, that because the plea agreement contemplated a grant of probation with "reasonable" conditions, Patton is attempting to challenge something he knew about, at least in a general sense, at the time of the plea. More forcefully, they rely on *People v. Espinoza* (2018) 22 Cal.App.5th 794 (*Espinoza*) to argue that by waiving his right to appeal the "sentence stipulated herein," Patton's challenge to the probation condition necessarily "affect[s] the validity of the plea" because he is seeking to narrow the scope of his appellate waiver.

The People's first argument need not detain us long. The mere fact that Patton knew some unspecified "reasonable" restrictions or requirements could be imposed as a condition of his probation does not mean he was agreeing to accept *anything* the court decided to include, regardless of how unreasonable he thought it was. The People's reliance on *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon*) is misplaced. In that case, the defendant challenged the specific sentence to which he had agreed as part of his plea agreement, "as opposed to a matter left open or unaddressed by the deal." (*Id.* at

6

p. 86.)  Here, unlike in *Panizzon*, Patton is challenging the imposition of an allegedly

*unreasonable* probation condition that he had no knowledge of at the time he entered into

the agreement.

The boilerplate appellate waiver included on the plea form likewise does not

preclude Patton's appeal.  As this court has previously observed, "[a] defendant may

waive the right to appeal as part of a plea bargain where the waiver is knowing,

intelligent and voluntary.  [Citation.]  A broad or general waiver of appeal rights

ordinarily includes error occurring before but not after the waiver because the defendant

could not knowingly and intelligently waive the right to appeal any unforeseen or

unknown future error.  [Citation.]  Thus, a waiver of appeal rights does not apply to

' "possible future error" [that] is outside the defendant's contemplation and knowledge at

the time the waiver is made.' "  (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815

(*Mumm*), quoting *Panizzon*, *supra*, 13 Cal.4th at p. 85; accord, *People v. Vargas* (1993)

13 Cal.App.4th 1653, 1662–1663 (*Vargas*) [general waiver of appeal rights does not

constitute "a specific waiver of future sentencing error"]; *People v. Sherrick* (1993)

19 Cal.App.4th 657, 659 [general waiver of right to " 'appeal any ruling in this case' "

does not preclude argument that sentencing court decided his eligibility for probation

" 'on a patently erroneous standard' "]; *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1160

[a general waiver does not preclude attacks on subsequent errors that are unforeseen or

unforeseeable at the time the waiver was made]; *People v. Kennedy* (2012) 209

Cal.App.4th 385, 391 [under *Panizzon*, "waiver will not be construed to bar the appeal of

sentencing errors occurring subsequent to plea especially when the defendant is

7

attempting to appeal sentencing issues left unresolved by the particular plea agreement"].)

In *Espinoza*, *supra*, 22 Cal.App.5th 794, the appellate court relied on Justice Marvin Baxter's unusual concurring opinion to his own majority opinion in *People v. Buttram* (2003) 30 Cal.4th 773 (*Buttram*).  The holding of *Buttram* is unremarkable and fully consistent with prior case law.  The defendant pleaded guilty in exchange for an agreed maximum sentence, or "lid."  (*Id.* at p. 776.)  There was nothing in the plea agreement affirmatively waiving his right to appeal any sentencing issue that arose after the plea.  (*Id.* at p. 778.)  Nonetheless, the People argued that a certificate of probable cause was required because "when a defendant negotiates a maximum sentence in return for his plea," any appellate challenge to a sentence imposed within the maximum "is an attack on the validity of the plea itself, and thus requires a certificate of probable cause." (*Id.* at p. 780.)  Rejecting this argument, the Supreme Court held that "absent contrary provisions in the plea agreement itself," no certificate of probable cause was required for defendant to appeal the trial court's discretionary decision to impose the maximum allowable sentence rather than some lesser punishment.  (*Id.* at p. 790.)

Noting that the plea agreement in *Buttram* did not address defendant's ability to attack a sentence within the allowable sentencing range, Justice Baxter's concurring opinion urged parties in future cases to expressly negotiate that issue (30 Cal.4th at p. 791 (conc. opn. of Baxter, J.)), inferentially advocating that criminal defendants be encouraged to waive their appellate rights if the trial court imposed a sentence within the agreed-upon range.  He suggested that with such an express waiver, "an attempt to appeal

8

the sentence notwithstanding the waiver would necessarily be an attack on an express term, and thus on the *validity*, of the plea," requiring a certificate of probable cause. (*Id.* at p. 793 (conc. opn. of Baxter, J.).)

*Espinoza* sought to apply Justice Baxter's recommendations to a defendant's post-plea appeal challenging a condition of probation. In *Espinoza*, the defendant "broadly waived her 'right to appeal the judgment and any rulings of the court.' " (22 Cal.App.5th at p. 801.) The court found this "broad[]" waiver sufficient to invoke Justice Baxter's concurring comments and preclude defendant's appeal in the absence of a certificate of probable cause.[5] (*Id.* at p. 803.)

Whatever the merits of *Espinoza*'s analysis, its premise depends on the defendant's *express waiver* of the right to appeal a discretionary decision on probation conditions that is made *after* entry of the plea. As a result, the first issue we must address is the scope of the appellate waiver in this case. (See *Vargas*, *supra*, 13 Cal.App.4th at p. 1661; *People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*).) Here, the provision in the plea agreement purporting to waive Patton's appellate rights is decidedly different—and significantly narrower—than the comparable provision in *Espinoza*.

---

5       There is, of course, a difference between the express waiver of a defendant's right to appeal a known stipulated sentence (*Panizzon*, *supra*, 13 Cal.4th at pp. 73–74), the waiver of the right to appeal a sentence where at least the maximum punishment is known (*Buttram*, *supra*, 30 Cal.4th at pp. 777, 792 (conc. opn. of Baxter, J.)), and a situation where the defendant generally waives her right to appeal the judgment but does not know which particular conditions of probation the court is considering (*Espinoza*, *supra*, 22 Cal.App.5th at p. 798 [defendant only told she would be subject to " 'other terms and conditions to make sure [she was] successful on probation' "]).

In *Espinoza*, the plea form advised the defendant that she had "the right to appeal the judgment and rulings of the court." (22 Cal.App.5th at p. 797.) She checked a box on the form indicating that she agreed to "give up [her] right of appeal." (*Ibid.*) In contrast, Patton initialed a box on the plea form in this case that stated, "I give up my right to appeal the following: (1) denial of my 1538.5 motion, (2) issues related to strike priors (under [§§] 667(b)–(i) and 1170.12), and (3) *any sentence stipulated herein*." (Italics added.) At an earlier point on the form the parties indicated that in exchange for his plea, Patton was promised: "NOLT. Upon successful completion of two years probation and full satisfaction of restitution, no opposition to [section 17, subdivision (b)] reduction to misdemeanor."[6] According to the People, the plea agreement meant that Patton "negotiated a grant of probation, with appropriate terms and conditions."

In waiving his right to appeal "any sentence stipulated *herein*," Patton's plea agreement referred to the terms of the sentence that were included *in the agreement itself*. (Italics added.) We construe that language to apply to the specifics of the stipulated sentence *specified in his plea agreement*. By its terms, the scope of the waiver is limited; it did *not* encompass provisions (such as particular conditions of probation) that were yet to be determined in future proceedings. (*Becerra*, *supra*, 32 Cal.App.5th at p. 188 [no certificate required "[i]f the defendant's claim is not within the scope of an appellate waiver"].) Thus, Patton's appeal in no way attacks the plea or affects its validity, and

---

6       "NOLT" is an acronym meaning that the district attorney will not oppose local time.

10

accordingly no certificate of probable cause was required.  (Rule 8.304(b)(4).)  We therefore turn to the merits of Patton's appeal.

B.        *Validity of the Electronic Device Search Condition*

Patton argues, as he did below, that the electronics search condition cannot validly be imposed under *Lent*, *supra*, 15 Cal.3d 481.  He also raises a facial overbreadth challenge for the first time on appeal.  We reject both contentions.

1.        *Additional Background*

Patton went with friends to a Hit Mobile Store during business hours and stole four cell phones, two Apple Watches, an iPad, and a virtual reality headset valued in the aggregate at $4,620.  He pleaded guilty to felony grand theft.  Before Patton's sentencing, the store manager told the probation department that he believed the same individuals had burglarized the store a second time months after the admitted theft.  The probation department also interviewed Patton telephonically.  He claimed he "was just following" friends from school and "the streets" and had pawned the phone he stole for $550 to purchase "Norcos."

At sentencing, Patton's counsel challenged the electronics search condition, arguing there was an insufficient nexus under *Lent*.  The trial court expressed surprise: "So, Counsel, you don't believe that in a case where he's being charged with . . . stealing from a store that sells telephones and electronic devices, and working with a group of people that did that to the tune of $4,600 there is a nexus to the extension of the fourth waiver to electronics?"  In response, counsel indicated there was enough of a nexus to justify an "external search" of an electronic device, but not to "searching the internals of

11

that device."  The People disagreed, averring "this is the most nexus that we've ever seen with an individual needing to have his fourth waiver extend to cell phones."  The court concurred:

> "Clearly there was a theft of a cell phone here.  And he was part of a ring where people were stealing these, clearly selling them or doing something.  Because it's unclear why he needed as many phones as he was taking.  [¶]
>
> "He also has a longstanding drug problem that we're going to try to curtail.  Probation can hopefully monitor that and monitor his phone and make sure he's not purchasing cocaine that he first used at 15 years old, or marijuana that he started using at 15 years old or, in fact, abusing cough syrup or using alcohol at all, given he's 20 years old and not able to legally drink alcohol.  And there's going to be a condition that he not drink.  [¶]
>
> "We're also going to . . . attempt to monitor any no-contact order he has with the other individuals that were involved in this.  And a no-contact with the store that he stole from."

As a condition of probation, Patton must "submit [his] person, vehicle, residence, property, personal effects, computers, and recordable media including electronic devices to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation officer] or law enforcement officer."

###### 2.     *The Condition is Reasonable Under* Lent

Consistent with his argument before the trial court, Patton claims the electronics search condition is unreasonable under *Lent*, *supra*, 15 Cal.3d 481.  A sentencing court has "broad discretion" to fashion appropriate conditions of probation that facilitate rehabilitation and foster public safety.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  We review the conditions imposed for abuse of discretion.  (*People v. Olguin*

12

(2008) 45 Cal.4th 375, 379 (*Olguin*).) A probation condition is not invalid under *Lent* unless it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Ibid.*, quoting *Lent*, *supra*, 15 Cal.3d at p. 486.)

The parties agree that *Lent*'s second prong is met: use of electronic devices is not inherently criminal. They disagree as to the first and third prongs. Patton contends the electronics search condition does not relate to his crime merely because he happened to steal electronics. He claims there must be indication he *used* an electronic device to commit, plan, or discuss criminal activity. The People disagree, focusing on Patton's admitted theft of $4,620 in electronics from an electronics store to argue the condition relates to his crime. The parties likewise disagree as to *Lent*'s third prong, offering competing interpretations of *Ricardo P.*, *supra*, 7 Cal.5th 1113, and disagreeing whether the burdens imposed by the electronics search condition are proportional to a legitimate rehabilitative aim.

We end our inquiry at *Lent*'s first prong and have no need to scrutinize *Ricardo P.* Patton and his companions stole four cell phones and other electronic devices from an electronics store. According to the presentence probation report, Patton was with his friends from school and "the streets," and the same individuals may have burglarized the same store a second time a few months later. Patton calls it a "red herring" that he and his companions happened to steal cell phones, and suggests the essence of his crime was

13

stealing something of value to support a drug habit. We are not persuaded. Patton did not steal jewelry or other personal property; he stole *electronic devices*. The first prong of *Lent* asks whether the probation condition has *no* relationship to the conviction. (*Olguin*, *supra*, 45 Cal.4th at p. 379.) This broad language does not require a specific connection to the *instrumentalities* of the convicted offense. (See, e.g., *People v. Hughes* (2012) 202 Cal.App.4th 1473, 1481 [probation condition prohibiting defendant from using medical marijuana satisfied the first prong because it related to his convictions for cultivating, transporting, and possessing marijuana for sale]; *People v. Appleton* (2016) 245 Cal.App.4th 717, 724 (*Appleton*) ["somewhat attenuated" link between electronics search condition and sexual assault was enough given the deferential standard of review].)[7]

Given the nature of Patton's offense, there is a relationship between theft of electronic devices and the imposition of an electronic device search condition. Although we do not reach its analysis of *Lent*'s third prong, it is noteworthy that *Ricardo P.* approved of *Malik J.*, *supra*, 240 Cal.App.4th 896, where the court upheld an electronics search condition as to a defendant convicted of stealing cell phones, finding the condition enabled probation officers to determine whether a cell phone on his person was stolen.

---

[7] *Ricardo P.* addressed only the third prong of *Lent* —whether the electronics search condition " ' "requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1119.) Summarizing and quoting the lower court's analysis as to *Lent*'s first prong, the opinion includes language that " ' "there is no indication that any electronic device was involved in the commission of the burglaries." ' " (*Ibid.*) We do not construe this as a gloss on *Lent*'s first prong, which *Ricardo P.* presupposed. (*Ibid.*) Cases are not authority for points not considered. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

14

(*Malik J.*, at pp. 902, 904.)  Patton is right that *Malik J.* involved an as-applied constitutional overbreadth analysis, not an analysis under *Lent*'s first prong.  But it nonetheless supports the notion that *some* electronics search condition may reasonably be imposed under *Lent* where the underlying crime involved electronics theft.  Patton's attempts to parse the facts in *Malik J.* do not affect this basic point.

In short, the first prong of *Lent* is not satisfied.  There *is* a relationship between the electronics search condition and Patton's felony grand theft conviction.  Accordingly, the condition is valid under *Lent*.

> 3.    *Some Electronics Search Condition May Constitutionally Be Imposed, and Patton Forfeited Any As-Applied Challenge*

Patton next claims the electronics search condition is unconstitutionally overbroad. He is correct that the warrantless search of electronic devices "significantly burdens privacy interests."  (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1122−1123.)  By citing *Riley v. California* (2014) 573 U.S. 373, 393−395 and article I, section 1 of the California Constitution for this point, the *Ricardo P.* court underscored the significant constitutional interests at stake when this condition of probation is imposed.  Because modern-day cell phones are platforms for vast repositories of personal information (*Riley*, at pp. 395–396), warrantless electronics searches have "potentially greater breadth . . . compared to traditional property or residence searches."  (*Ricardo P.*, at p. 1127.)  The privacy intrusion is "of a different order" when warrantless searches are performed by a probation officer or other government official.  (*Id.* at p. 1123.)

A probation condition imposing limits on constitutional rights must be closely tailored to its legitimate objective to avoid being invalidated as unconstitutionally overbroad. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) " 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights–bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*Appleton*, *supra*, 245 Cal.App.4th at p. 723.) We review constitutional challenges to probation conditions de novo. (*Ibid.*)

The People argue Patton forfeited his overbreadth challenge by failing to raise it before the trial court. An as-applied constitutional challenge is forfeited unless previously raised. (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.) " 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so they may be corrected.' " (*Id.* at p. 881.) However, the forfeiture rule does not extend to facial constitutional challenges presenting pure questions of law that can be resolved without referring to the particular sentencing record developed below. (*Id.* at pp. 885, 889.) A facial challenge "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts." (*Id.* at p. 885.) The claim is that a condition cannot have *any* valid application, without relying on any facts in the sentencing record. (See, e.g., *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1347.)

A probationer whose underlying crime involved stealing cell phones may constitutionally be subjected to *some* electronics search condition. *Malik J.* approved a

16

condition that subjected any electronic devices such as cell phones, computers and notepads in the probationer's custody and control to warrantless search, reasoning that officers reasonably needed to determine whether devices in the probationer's possession were stolen. Bearing in mind that perfect fit was impossible, the fact that a narrower condition could serve this same goal did not render the condition overbroad. (*Malik J.*, *supra*, 240 Cal.App.4th at pp. 902, 904.) The condition imposed here is similar to the one approved in *Malik J.*, albeit without limitations on forensic examination or accessing remotely stored information. Although the condition does not expressly limit its scope to electronic devices in Patton's custody and control (e.g., not computers he may leave at work), that is its reasonable construction. (See *People v. Hall* (2017) 2 Cal.5th 494, 501 [probation conditions should not be invalidated on constitutional grounds if they can be given a reasonable and practical construction].)[8]

Importantly though, *Malik J.* involved an as-applied challenge. The court reviewed the sentencing record to evaluate whether the electronics search condition was sufficiently tailored to the reasonable goal of determining if cell phones on the

---

[8]     We need not address whether a significantly more expansive electronic device search condition might be unconstitutionally overbroad on its face. (See *Appleton*, *supra*, 245 Cal.App.4th at p. 721, 729 [probation condition subjecting defendant's electronic devices "to forensic analysis search for material prohibited by law" deemed unconstitutionally overbroad].)

17

probationer's person were stolen. Patton, in contrast, did not argue overbreadth; he only argued there was no nexus under *Lent*.[9]

As *Sheena K.* observed, "in some instances, a constitutional defect may be correctable only by examining factual findings in the record or remanding to the trial court for further findings." (40 Cal.4th at p. 887.) That is the scenario here. Patton argues his crime and social history do not justify so broad an intrusion on his privacy. This is a classic as-applied claim. Had he raised a constitutional challenge at sentencing, the court might have asked whether he had used electronic devices to coordinate the burglary with friends or to buy drugs. Or the court could have asked questions to focus the condition on search efforts that would help officers discover if electronic devices in Patton's possession were stolen. Because no constitutional objection based on privacy interests was raised, the court had no occasion to conduct such an inquiry.

In short, *Malik J.*, *supra*, 240 Cal.App.4th 896 demonstrates on similar facts that some electronics search condition could constitutionally be imposed. The closeness of fit between the condition imposed and defendant's rehabilitation veers into as-applied territory. Patton forfeited that claim by failing to raise a constitutional objection before the trial court.

---

9       We infer that defense counsel in *Malik J.* raised an overbreadth challenge at sentencing. (*Malik J.*, *supra*, 240 Cal.App.4th at p. 900.)

DISPOSITION

The judgment is affirmed.

DATO, J.

I CONCUR:

HUFFMAN, Acting P. J.

Haller, J., Concurring.

I agree with the majority's conclusions that a certificate of probable cause is not required and the challenged probation condition was proper. I write separately to clarify my views on the necessity of obtaining a probable cause certificate before challenging a probation condition as unreasonable. In particular, I agree with the analysis in *People v. Espinoza* (2018) 22 Cal.App.5th 794 (*Espinoza*), but find the decision distinguishable. Although the distinction is subtle, it is critical for appellate counsel to understand this difference when deciding whether to seek a probable cause certificate and in briefing the issue on appeal.[1]

An exception to the probable cause certificate requirement after a guilty plea applies when the appellant raises "[g]rounds that arose after entry of the plea *and* do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(B), italics added.) Challenges that "do not affect the plea's validity" (*ibid.*) are arguments on matters outside the scope of the plea agreement (*People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*)). In determining the scope of the plea agreement, the courts apply a contract analysis and determine the parties' mutual intent by examining the plea agreement language and other objective criteria. (*Becerra*, at pp. 188–189.)

---

[1] In a prior unpublished opinion, counsel and this court did not fully consider the distinction. In that case, there was no prejudice because we reached the issue on its merits and found it was unavailing.

Under these rules, the critical issue on the probable cause certificate requirement is whether the court's ruling fell within the intended scope of the plea agreement, as that intent was objectively manifested by the parties. (*Becerra*, *supra*, 32 Cal.App.5th at pp. 188–189.) This is true even if the appellate challenge is characterized as an argument that the plea was not knowing or intelligent. (*Id.* at p. 188; *Espinoza*, *supra*, 22 Cal.App.5th at p. 802; see *People v. Panizzon* (1996) 13 Cal.4th 68, 76 (*Panizzon*).) A probable cause certificate is needed to challenge a plea agreement (including an appellate waiver provision) on the basis that it was not knowing and intelligent if the challenge falls within the scope of the agreement's provisions. (*Becerra*, at p. 188; *Espinoza*, at pp. 802–803; see *Panizzon*, at pp. 76–79.) On the other hand, a probable cause certificate is not necessary to challenge a court ruling that is outside the scope of a plea agreement term.

In *Espinoza,* the defendant's plea agreement included her waiver of the " 'right to appeal the judgment and rulings of the court.' " (*Espinoza*, *supra*, 22 Cal.App.5th at pp. 797, 801.) In a criminal case, judgment is rendered when the trial court orally pronounces sentence. (See *Becerra*, *supra*, 32 Cal.App.5th at p. 189.) In challenging the probation condition imposed at sentencing, the *Espinoza* defendant did not dispute that the challenge fell within the scope of her appellate waiver in the plea agreement. (*Espinoza*, at p. 801.) But she argued her "waiver was not knowing and intelligent" and thus she was not required to obtain a probable cause certificate. (*Ibid.*) In support of this contention, she relied on " 'post-plea events' " (the imposition of the probation conditions). (*Id.* at p. 802.)

2

In my view, the *Espinoza* court correctly rejected this argument because the defendant conceded her waiver of the right to appeal *the judgment and the court's rulings* encompassed a challenge to the later-imposed probation conditions. The fact that the probation conditions were decided and imposed after the plea does not change this conclusion. As stated by our high court with respect to the need for a probable cause certificate, "[t]he mere fact that [the challenged ruling] happened a month after the plea . . . is not determinative [and the fact] that the events supposedly giving rise to [defendant's constitutional challenge] occurred afterwards likewise is of no consequence. Rather, 'the crucial issue is *what* the defendant is challenging.' " (See *Panizzon*, *supra*, 13 Cal.4th at p. 78.)

In *Panizzon,* the defendant was challenging the constitutionality of his agreed-upon sentence based on events occurring after the sentence was imposed. (*Panizzon*, *supra*, 13 Cal.4th at pp. 74, 77–78.) In *Espinoza,* the defendant was challenging the validity of her agreement to waive her right to appeal, which she conceded included "herright to appeal the imposition of probation terms." (*Espinoza*, *supra*, 22 Cal.App.5th at p. 801.) In both situations, the court held a probable cause certificate was required because the challenge sought to attack matters within the scope of the plea agreement. (*Panizzon*, at pp. 74–79, 89; *Espinoza*, at pp. 798–803.)

These holdings do not bar a defendant from claiming on appeal that a waiver of the right to appeal was not knowing or intelligent, and, if he or she prevails on this argument, from challenging the reasonableness of the later-imposed probation conditions. But they do bar a defendant from making these arguments when challenging a matter

3

within the scope of the plea agreement *without first obtaining a certificate of probable cause*.

This case is different from *Espinoza* because Patton's appeal waiver was narrower. Patton agreed to waive his right to appeal (1) the denial of his Penal Code section 1538.5 motion; (2) strike priors; and (3) "*any sentence stipulated herein*." (Italics added.) As the majority observes, in waiving his right to appeal "any sentence stipulated herein," the scope of Patton's plea agreement was limited to those terms included in the agreement itself. Unlike *Espinoza,* in which the defendant waived her right to appeal "the judgment" and conceded her probation condition challenge fell within the scope of this appellate waiver, Patton's probation condition challenge is outside his appellate waiver. Thus, Patton's appeal did not attack the plea or affect its validity, and no certificate of probable cause was required.

HALLER, J.

4